UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:05CR284HEA (MLM) |
| | ) | |
| KENNETH R. FISHER, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter came before the court on the pretrial motions of the parties. The government filed a Motion for Pretrial Determination of the Admissibility of Defendant's Statements. [Doc. 16] Defendant filed a Motion to Suppress Evidence and Statements. [Doc. 19] The government responded to the defendant's Motion. [Doc. 21] An Evidentiary Hearing was held on July 8, 2005. Defendant was present in person and represented by counsel Ms. Caterina M. DiTraglia . The government was represented by Assistant United States Attorney Sirena M. Wissler. Trial in this case has been set on **September 6, 2005** at **9:30 A.M.** before the Honorable Henry A. Autrey.

At the Evidentiary Hearing the government presented the testimony of Tom Harster who has been a detective with the Jefferson County Sheriff's Department for six years. He testified about his experience, training and certification in the detection and investigation of clandestine methamphetamine laboratories. He has taken at least five training courses plus refresher courses and was certified in 2001. Based on the testimony and evidence adduced, the undersigned makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

Because the Jefferson County Sheriff's Department was shorthanded, in April, 2003 Detective Harster was assigned to road patrol (north zone). On April 14, 2003 he received a dispatch about a missing person. He interviewed the complainant and learned that there was a possibility that the missing person might be at 3321 West Rock Creek Road in House Springs, Missouri. At approximately 11:20 p.m. he and Corporal Perry Tindall responded to the West Rock

Creek Road address. Det. Harster was aware that defendant, Kenneth Fisher, lived there both from information from the complainant and because he was aware of a previous unsustained report of loud music from the address. As he arrived and exited his vehicle, he observed a strong chemical odor which he recognized as ether and from his experience and training knew this was consistent with the manufacture of methamphetamine. As he passed a van located on the driveway he observed in plain view inside the van a green cannister emitting a strong noxious odor of anhydrous ammonia and two jugs of muriatic acid. He knew from his training and experience that these items are consistent with the manufacture of methamphetamine. He also observed two pots with marijuana plants.

Det. Harster approached the front door of the residence, a single wide trailer, by way of a small wooden porch. See photographs, Def.Ex.B and C. On the porch he observed a 10-12" glass jar with no lid in which pseudoephedrine pills were soaking in ether. There was also a wooden mixing spoon in the jar. Based on his training and experience, he recognized this as consistent with the manufacture of methamphetamine.[1] He did not move or seize the jar at that time.

Det. Harster knocked on the front door and defendant answered. Defendant invited Det. Harster to come inside the residence. When he entered he observed an even stronger chemical odor, similar to the one he observed on the porch. He also saw a clear plastic dish on the stove containing a reddish substance as well as a pen tube with a burned end. He associated these items with the manufacture of methamphetamine. He therefore placed defendant under arrest, based on the odors, the jar on the porch, the pen tube and the clear plastic dish on the stove with reddish residue.

Also present in the residence was an individual sitting on the couch that Det. Harster knew as Fred McClarney from a previous arrest for the manufacture of methamphetamine. He placed McClarney under arrest on outstanding warrants.

---

[1] Det. Harster testified that to "cook" methamphetamine refers to any chemical reaction, in this case between the pseudoephedrine pills and the ether.

There is some discrepancy about whether Det. Harster advised defendant of his <u>Miranda</u> Rights after he arrested him. Det. Harster testified he did not advise defendant of <u>Miranda</u> Rights but his report indicates that he did. Det. Harster acknowledged that his recollection was undoubtedly better at the time of the preparation of the report than at the time of the hearing. In any event, after placing defendant under arrest, he asked defendant for consent to search the residence. Det. Harster told defendant about the items he had located and the odors he had observed and informed defendant that he believed he had probable cause to obtain a search warrant for the premises. He told defendant if he did not consent he would seek a search warrant. He presented defendant with the Jefferson County Sheriff's Department Permission to Search form. He read it to defendant and asked defendant to look at it. Defendant indicated he understood. He appeared to be of average intelligence and Det. Harster had no trouble communicating with defendant and he did not appear confused. The form authorized Det. Harster and Cpl. Tindall to search the premises and out buildings at 3321 West Rock Creek Road and "my motor vehicle" described as a 1986 Dodge Ram Van with the type, color and VIN listed on the form. Defendant said he did not know to whom the van belonged; nevertheless, he consented to the search of it. Defendant signed the form. Gov.Ex.1. Det. Harster did not tell defendant he was obligated to consent; no threats or promises were made to induce defendant to sign. Cpl. Tindall was standing by McClarney and the conversation between Det. Harster and defendant was one-on-one. Although Det. Harster was in uniform and armed, he did not remove his firearm from his holster. When Det. Harster responded to the premises he believed defendant was the only one who lived there. However, as he arrived he saw that there was another residence at the same address which he learned was occupied by defendant's mother, Jackie Fisher.[2] Det. Harster asked Officer Grobe to respond to Ms. Fisher's residence and to ask her permission to search the entire property. Officer

---

[2] Defendant introduced as Def. Ex. A, a photograph of a log cabin-type residence with a red roof and a stone chimney. Next to this residence there appears the side of another red roofed log cabin-type residence. Det. Harster testified that the photograph was a true and accurate representation of Ms. Fisher's house and the relationship between the residences as they appeared on April 14, 2003. However, the side of the second residence depicted is clearly not defendant's trailer which appears in photographs Def.Ex.B and C. This apparent inconsistency was not explained during the testimony and the court can fathom no explanation.

Grobe presented a similar Jefferson County Sheriff's Department Permission to Search form authorizing a complete search of the premises at 3221 [West] Rock Creek Road and she signed it. Gov.Ex.2. Officer Grobe told Det. Harster that her consent was voluntary. No items were seized pursuant to this search. Gov.Ex.2 at p. 2.

During the search pursuant to the consent signed by defendant, the officers seized the jar on the porch and a Rubbermaid container with pink residue located on the kitchen counter.[3] The other items seized in the residence are set out on the inventory report. [4]

From the Dodge Ram van the officers seized a small pvc tube containing a tank with altered valve (the green cannister emitting the odor anhydrous ammonia), 2 pots of marijuana plants, [see Def.Ex.D] a one gallon multi-purpose sprayer and two one gallon jugs of muriatic acid.

From defendant's passenger vehicle they seized five brass fittings.

All of the seized items are listed on Def.Ex.E. Based on his experience and training, Det. Harster explained how each of the seized items is consistent with the manufacture of methamphetamine.[5]

---

[3] It is not clear if this Rubbermaid container on the kitchen counter is the same clear plastic dish with reddish residue Det. Harster observed on the stove. If it is not, the dish was apparently not seized. The pen tube with burned end was apparently not seized as well because it is not on the inventory list. Also the inventory report, which was not prepared by Det. Harster, states the jar on the porch was "plastic". Def.Ex.D is a photograph showing the jar clearly marked as a "glass" storage jar.

[4] From the kitchen they seized a pack of coffee filters, a cooking pot, a pack of four lithium batteries, multiple clear plastic bags, one trash bag with blister packs, starting fluid, foil, coffee filters, and other miscellaneous items, a police scanner, a small propane tank, and three cans of starting fluid with holes in the can. At the rear of the residence, the officers seized one multi purpose sprayer with tubing as well as one gallon of muriatic acid. In addition, one foil with burn residue was located in the bathroom toilet.

[5] The Department of Natural Resources has a protocol for the disposal of hazardous waste. Because most of the items are associated with the manufacture of methamphetamine they are considered hazardous waste and have been destroyed pursuant to the DNR protocol. No testimony was adduced with regard to the disposition of the police scanner and the other items which cannot be considered hazardous waste. It is not clear if the items containing residue were tested for the presence of incriminating substances prior to destruction.

# CONCLUSIONS OF LAW

**1.      Arrest of Defendant**

Law enforcement officers may arrest a person without a warrant if they have probable cause to believe that the person has committed or was committing a crime. <u>Gerstein v. Pugh</u>, 420 U.S. 103 (1975); <u>United States v. Watson</u>, 423 U.S. 411 (1976).  Probable cause for arrest exists if at the time of the arrest the facts and circumstances within the knowledge of the officers and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing that the person had committed or was committing an offense. <u>Beck v. Ohio</u>, 379 U.S. 89, 91 (1964). <u>See also</u> R.S.Mo § 544.216 (a municipal law enforcement officer may arrest on view without a warrant any person about whom he has reasonable grounds to believe has violated any law of this state).

The proper standard for determining whether probable cause exists is whether the arresting officer reasonably believes an individual has committed or is committing a crime. <u>United States v. Durile Lee Brown</u>, 49 F.3d 1346 (8th Cir. 1995).  More specifically

> [i]n determining whether probable cause exists to make a warrantless arrest a court will consider whether the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense.  Probable cause is to be assessed in terms of the circumstances confronting a reasonably cautious police officer at the time of the arrest, and the arresting officer is entitled to consider the circumstances, including arguably innocent conduct, in light of his training and experience.  "[T]he probability, and not the *prima facie* showing, of criminal activity is the standard of probable cause."

<u>Hannah v. City of Overland, MO</u>, 795 F.2d 1385, 1389 (8th Cir. 1986) (quoting <u>United States v. Wallraff</u>, 705 F.2d 980, 990 (8th Cir. 1983)).

Here, it is undisputed that Det. Harster was trained, certified and had extensive experience in the detection and investigation of methamphetamine laboratories.  As he exited his vehicle he smelled the strong odor of ether which is consistent with the manufacture of methamphetamine. As he approached the front door he saw on the porch a glass jar in which pseudoephedrine pills were soaking in ether, a form of a methamphetamine "cook".  When entered the residence at defendant's invitation, he observed an even stronger odor of ether and saw the pen tube with the burned end and the plastic dish with reddish residue on the stove.  At this time he placed defendant

under arrest based on his immediate perception of odors associated with methamphetamine production as well as his visual operations of the pen tube and jar in which pseudoephedrine pills were soaking in ether and the plastic dish with residue on the stove. It is clear he had developed sufficient probable cause for the arrest of defendant. See United States v. Clayton, 210 F.3d 841, 845 (8th Cir. 2000) (holding perception of odor associated with methamphetamine production and visual observation of object believed to be methamphetamine sufficient for probable cause for search). The Supreme Court has recognized that the odor of an illegal drug can be probative in establishing probable cause for a search. United States v. Caves, 890 F.2d 87, 90 (8th Cir. 1989) citing Johnson v. United States, 333 U.S. 10, 13 (1948). See also United States v. McCoy, 200 F.3d 582, 584 (8th Cir. 2000) (holding odor of burnt marijuana on defendant and odor of air freshner in vehicle were sufficient for probable cause to search vehicle); United States v. Neumann, 183 F.3d 753, 756 (8th Cir.) (holding officer's detection of smell of burnt marijuana gave sufficient probable cause to search vehicle), cert. denied, 528 U.S. 981 (1999). Under the totality of the circumstances of this case and given Det. Harster's experience and training, the probability that defendant was engaging or had recently engaged in criminal activity is clearly established. The arrest of defendant was proper.

2.      **Consent to Search Residence and Van**

A search based on the consent of an individual may be undertaken by government actors without a warrant or probable cause and any evidence discovered during the search may be seized and admitted at trial. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). Consent must be freely and voluntarily given. Id. In determining whether consent is freely and voluntarily given, the court must examine the totality of the circumstances. United States v. Mendenhall, 446 U.S. 544, 547 (1980); United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990); United States v. Lee, 886 F.2d 998, 1000 (8th Cir. 1989), cert. denied, 495 U.S. 906 (1990).

A statement by a law enforcement official that he will attempt to obtain a search warrant does not automatically vitiate an otherwise consensual search. United States v. Dennis, 625 F.2d 782, 793 (8th Cir. 1980).

The Eighth Circuit has clearly held that Miranda warnings are not necessary before a consent to search is requested and given. United States v. Washington, 957 F.2d 559, 563 (8th Cir.), cert. denied, 506 U.S. 883, (1992). Because requesting consent to search is not likely to elicit an incriminating statement, such questioning is not "interrogation" and thus Miranda warnings are not required. United States v. Glenna, 878 F.2d 967 (7th Cir. 1989); Cody v. Solem, 755 F.2d 1323 (8th Cir.), cert. denied, 474 U.S. 833 (1985).

The inquiry must turn to whether the consent was voluntary. A consent is voluntary if it is "the product of an essentially free and unconstrained choice by its maker," Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973), rather than "the product of duress or coercion, express or implied." Id. at 227. The defendant's awareness of the right to refuse is not necessary for a consent to be voluntary. Id. at 234-35; United States v. Heath, 58 F.3d 1271, 1275-76 (8th Cir.) (prosecution need not prove defendant was fully aware of rights under Fourth Amendment in order to establish voluntariness of consent), cert. denied, 516 U.S. 892, 116 S.Ct. 240 (1995); United States v. Barahona, 990 F.2d 412, 417 (8th Cir. 1993); United States v. Boyer, 988 F.2d 56, 57 (8th Cir. 1993) (defendant's lack of knowledge that he could withhold consent does not invalidate search); United States v. Chaidez, 906 F.2d 377, 380 (8th Cir. 1990). Further, the voluntariness of a consent is a question of fact to be determined from the totality of the circumstances. Bustamonte, 412 U.S. at 277.

"In assessing voluntariness courts look both to the characteristics of the accused and the details of the environment." United States v. Miller, 20 F.3d 926, 930 (8th Cir.), cert. denied, 513 U.S. 886, 115 S.Ct. 226 (1994). The following are relevant to this determination:

> The age of the defendant; his general intelligence and education; whether he was under the influence of a mind-altering substance; whether he was informed of his right to withhold consent or of his Miranda rights; the length of time he was detained and questioned; whether he was threatened, physically intimidated, or punished by the police; whether he relied upon promises or misrepresentations made by the police; whether he was in a public or secluded location; and whether he objected to the search or passively looked on. Chaidez, 906 F.2d at 381 (citations omitted).

United States v. Barahona, 990 F.2d at 417; United States v. Armstrong, 16 F.3d 289, 295 (8th Cir. 1994). The factors are not to be mechanically applied but rather are "valuable as a guide to analysis." Chaidez, 906 F.2d at 381.

In the present case the file indicates the defendant was 43 years old at the time of the incident. Det. Harster testified that he seemed of average intelligence and that he had no trouble communicating with him. There is no evidence that he was under the influence of a mind altering substance. Although he was not informed of his right to withhold consent or arguably of his Miranda rights, as noted above, neither is necessary to the voluntariness of a consent. He was detained one to two minutes before the consent was requested. He was not threatened, physically intimidated or punished in any way by Det. Harster or any other officer. The consent form which he signed specifically indicates that no threats or promises of any kind were made. There were no misrepresentations made to him. He was in his own home and had a witness, Mr. McClarney. He did not object to the search but looked on while the officers conducted the search. Chaidez, 906 F.2d at 381.

The items seized from the residence and van should not be suppressed.

**3.    Search of the Passenger Vehicle**

The passenger vehicle was not included on the Permission to Search form. There is no evidence before the court of any oral agreement or consent to search the passenger car. There is no evidence that the five brass fittings seized from the vehicle were in plain view. In fact, there is no evidence that it was defendant's car. Det. Harster testified it was "most likely" defendant's vehicle.

Ms. Fisher consented to a search of the entire premises and one could argue that this included the vehicle. However, there is no evidence that Mrs. Fisher had any common authority over the vehicle. See United States v. Matlock, 415 U.S. 164, 171 (1974) (holding consent to search may be given by the criminal suspect or by some other person who has common authority over the item to be searched). The only evidence about whether or not her consent was voluntary was Det. Harster's testimony that Officer Grobe said her consent was voluntary. Under the totality of these

circumstances the court finds that defendant did not consent to the search of the passenger vehicle and there is insufficient evidence to conclude that Ms. Fisher consented to it. Therefore, the five brass fittings seized from the passenger vehicle should be suppressed.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Government's Motion for Pretrial Determination of the Admissibility of Defendant's Statements be **DENIED AS MOOT** in that defendant made no statements. [Doc. 16]

**IT IS FURTHER RECOMMENDED** that defendant's Motion to Suppress Evidence and Statements be **DENIED** as to all items seized except for the five brass fittings and as to those brass fittings the Motion to Suppress should be **GRANTED**. [Doc. 19]

The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this  12th  day of July, 2005.